J-S47028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: R.M.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.D.M., FATHER | : : : : : : : | |
| | : | No. 2310 EDA 2025 |

Appeal from the Decree Entered May 30, 2025
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2025-A0010

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY OLSON, J.: **FILED JANUARY 30, 2026**

Appellant, J.D.M., ("Father") appeals from the May 30, 2025 final decree entered in the Court of Common Pleas of Montgomery County that terminated Father's parental rights to his biological child, R.M.M., a female born July 2013.[1] After careful review, we affirm.

---

[1] We acknowledge that, in a separate action (trial court docket number 2021-003166), the trial court, in an order dated May 16, 2022, granted a petition to change the name of the child from R.M.M. to R.M.M.-M. that was filed by the child's biological mother, A.M., ("Mother"). On May 30, 2025, Mother filed a *praecipe* to modify the caption of the trial court record in the case *sub judice* to reflect the child's name change. There is no indication in the certified record that the trial court granted Mother's request or that the trial court modified the record in the case *sub judice*. Moreover, no request to modify the record caption has been filed with this Court. As such, the child's name remains as it appeared on the record of the trial court at the time the appeal was taken. Pa.R.A.P. 904(b)(1).

The record demonstrates that, on January 29, 2025, Mother filed a petition for involuntary termination of Father's parental rights to the child pursuant to Section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, as discussed more fully *infra*. Mother sought involuntary termination of Father's parental rights to the child so Mother could proceed with a petition for adoption of the child by Mother's husband and the child's stepfather.[2] On February 12, 2025, the trial court appointed Sharon Hofer, Esquire ("Attorney Hofer") to represent the independent interests of the child.[3] That same day, February 12, 2025, the trial court scheduled a termination hearing, to be held virtually *via* an internet-based video conference platform, on March 25, 2025.

On March 25, 2025, the trial court, upon Father's request, appointed Benjamin B. Cooper, Esquire ("Attorney Cooper") to represent Father. The trial court rescheduled the termination hearing for April 30, 2025, to allow time for Attorney Cooper to confer with Father. On April 30, 2025, the trial

---

[2] Mother filed a petition for adoption in conjunction with the petition seeking involuntary termination of Father's parental rights.

[3] The trial court found that the child's legal interests did not conflict with Attorney Hofer's view of the child's best interests. N.T., 5/28/25, at 6. As such, the trial court held that Attorney Hofer could represent both the child's legal interests and best interests without the appointment of a separate guardian *ad litem* to represent the child's best interests. ***Id.***; ***see also In re Adoption of K.M.G.***, 240 A.3d 1218, 1224 (Pa. 2020). Moreover, when asked by the trial court, neither Mother nor Father objected to Attorney Hofer representing both the legal interests and the best interests of the child. N.T., 5/28/25, at 6.

court, at the request of Father and over the objection of Mother, continued the termination hearing until May 28, 2025, to allow Attorney Cooper additional time to confer with Father. On May 28, 2025, the trial court conducted a termination hearing in which Mother, Mother's counsel, Father, Attorney Cooper, and Attorney Hofer participated. On May 30, 2025, the trial court involuntarily terminated Father's parental rights to the child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). This appeal followed.[4]

Father raises the following issues for our review:

1. Whether the trial court abused its discretion and failed to consider the full history of the case when making its decision to terminate [Father's] parental rights[?]

2. Whether the trial court abused its discretion in denying [] the full ninety-day continuance for the [termination] hearing requested by [Attorney Cooper on April 30, 2025, thereby] prejudicing [Father?]

Father's Brief at 5.[5]

_____

[4] Both Father and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[5] In his appellate brief, Father raises a third issue for our review, namely, "Whether the trial court abused its discretion in disregarding [Mother's] refusal to give [Father] time to see the minor child[?]" Father's Brief at 5. A review of Father's Rule 1925(b) concise statement, however, reveals that Father failed to raise this issue before the trial court. Therefore, we find this issue waived on appeal. *In re C.P.*, 901 A.2d 516, 522 (Pa. Super. 2006) (finding that, in an appeal of an order granting termination of parental rights, mother waived her issue on appeal for, *inter alia*, failing to include the issue in her Rule 1925(b) concise statement); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Father's first issue challenges the trial court's order that involuntarily terminated his parental rights to the child. In matters involving termination of parental rights, our standard of review is well-settled.

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion[. W]e reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill[-]will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-359 (Pa. 2021) (citations, original brackets, and quotation marks omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record

could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, which requires a bifurcated analysis of the grounds for termination followed by an assessment of the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the [trial] court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to Section 2511(b)[ - ]determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*B.J.Z.*, 207 A.3d at 921 (citation omitted). Section 2511 requires clear and convincing evidence to support the grounds for termination, which we have defined as proof that is "so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citation omitted). A child has a right to a stable, safe, and healthy environment in which to grow, and the "child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009).

Here, Mother sought involuntary termination of Father's parental rights to the children pursuant to Section 2511(a)(1).  Section 2511(a)(1) states that,

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.** - The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

"A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition."  **Z.P.**, 994 A.2d at 1117 (emphasis in original).  Our Supreme Court, in **C.M.**, **supra**, reiterated the well-established principle that "a child has a right to essential parental care" and that, although the Adoption Act does not provide a strict definition of "parental duty" there are "certain irreducible qualities of a parent's attendant obligation."  **C.M.**, 255 A.3d at 364.  The **C.M.** Court explained that a parent's parental duty includes, *inter alia*, (1) a positive duty of affirmative performance; (2) communication and association with the child; (3) exerted effort to take and maintain a place of importance in the child's life; and (4) exercising reasonable firmness in

resisting obstacles placed in the path of the parent-child relationship. *Id.*; *see also In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (defining "parental duties" as requiring a parent to provide "love, protection, guidance[,] and support" to the child). Obstacles preventing a parent-child relationship include, *inter alia*, "substance abuse, mental health issues, homelessness, joblessness, criminal charges, or a confluence of some or all of these issues[.]" *L.A.K.*, 265 A.3d at 593. "The performance of parental duties requires that a parent exert himself [or herself] to take and maintain a place of importance in the child's life." *Id.* at 592 (citation and original quotation marks omitted).

> [E]ven where the evidence clearly establishes a parent [] failed to perform affirmative parental duties for a period in excess of six months, the [trial] court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights.

*C.M.*, 255 A.3d at 364 (citation, quotation marks, and original brackets omitted); *see also L.A.K.*, 265 A.3d at 593. In considering the totality of the circumstances,

> if competent evidence establishes the statutory criteria under [Section] 2511(a)(1), [a trial court is required to consider] three lines of inquiry: (1) the parent's explanation for his or her absence; (2) the post-abandonment contact between parent and child, including a parent's efforts to re-establish contact; and (3) consideration of the effect of termination of parental rights on the child pursuant to [Section] 2511(b).

*C.M.*, 255 A.3d at 365; *see also L.A.K.*, 265 A.3d at 593.

> [A] finding of abandonment, which has been characterized as one of the most severe steps the [trial] court can take, will not be predicated upon parental conduct which is reasonably explained or which resulted from circumstances beyond the parent's control. It may only result when a parent has failed to utilize all available resources to preserve the parental relationship.

*L.A.K.*, 265 A.3d at 592 (citations, quotation marks, and original brackets omitted); *see also C.M.*, 255 A.3d at 365. "[T]he focus under [Section] 2511(a)(1) is not the degree of success a parent may have had in reaching the child, but examines whether, under the circumstances, the parent [] utilized all available resources to preserve the parent-child relationship." *C.M.*, 255 A.3d at 365.

Once the trial court determines that involuntary termination of parental rights is warranted under Section 2511(a), the trial court is required to engage in an analysis pursuant to Section 2511(b) to determine whether termination is in the best interests of the child. Section 2511(b) states,

### § 2511. Grounds for involuntary termination

. . .

**(b) Other considerations.** - The [trial] court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).  The analysis under Section 2511(b)

> focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, [Section] 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the [Section] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the [trial] court when determining what is in the best interest of the child.
>
>> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of J.N.M.*, 177 A.3d 937, 943-944 (Pa. Super. 2018) (citation and original brackets omitted), *appeal denied*, 183 A.3d 979 (Pa. 2018).  A trial court may rely on a caseworker or social worker to determine the status of and nature of a parent-child bond.  *J.N.M.*, 177 A.3d at 944 (holding, a trial court "is not required by statute or precedent to order a formal bonding evaluation be performed by an expert" (citation omitted)); *see also In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (holding, a trial court must "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond" (citation omitted)).

Here, Father asserts that "[t]he trial court reviewed only the six months immediately preceding the filing of [Mother's petition seeking involuntary termination of his parental rights to the child.]" Father's Brief at 9. Father argues that the six months immediately preceding the filing of Mother's petition "was an insufficient period for the trial court to consider in making [its] decision to terminate [Father's] parental rights." *Id.* Father contends that the trial court "failed to give meaningful consideration to the case's entire history, which would rightfully extend to the child's birth and [Father's] involvement in the child's life since that time." *Id.*

In finding that Mother satisfied her burden under Sections 2511(a)(1) and (b), the trial court explained,

> I do believe and I don't doubt that [Father] cares about his daughter. But again, in this case, we have to look at what happened and [hold Father] accountable for [his] actions. [I]n this case, I think what's very telling to me is the May [12,] 2017 custody order that was entered into [evidence], and I'm going to read a portion of this into the record. It says that joint legal custody, primary physical custody to [Mother] with partial physical custody to [Father. Father] was notified [of the] hearing, properly served, contacted by [textual message and telephone] from the courtroom, and failed to appear. [Mother] agreed to liberal visitation for [Father] conditioned upon [Father] contacting and communicating directly with [Mother. Father is] not to have overnight[ visitations with the child] unless he has an appropriate residence to accommodate the child. [Father] may have overnight[ visitations] at his mother's [house] in Delaware provided he is there. Holidays and special events to be worked out between the parties by direct communication.
>
> And again, [the custody order] notes on the last page of [the] document[ that Father was] notified[ and] failed to appear.
>
> What I find telling is what [Father] didn't do after this 2017 [custody] order went into effect. [Mother] was willing[,] in

2017[,] to give him very liberal custody of his daughter, and it's by his own actions that he chose not to take advantage of that. I have heard no testimony today of all the time that he could have spent with the minor child. All I heard [were] excuses made or blame placed on other people. There was a custody order in effect. Both [Father] and [Mother] testified that no modification petition was ever filed. In fact, [Father] chose to relocate and never [] filed a relocation petition with the [trial c]ourt.

So[,] unfortunately, while I don't doubt that [Father] cared about his daughter, he had a liberal, a very liberal custody order in effect which has remained in effect up until this time and [Father] has yet to exercise upon it, and the only person he can fault for that is himself. Again, [Mother] never went to court to try to modify that custody order, which, again, gave [Father] extremely liberal visitation rights to his daughter, and he chose not to exercise them.

In addition, **in the last three years**, he has not seen his daughter, he has not sent cards, [and] he has not reached out to her. By his own admission, he couldn't [state] what grade [the child is attending], what school she goes to, what her teacher's name is, [or] what her favorite things to do are. Again, these don't show any evidence of any type of bond that's established. Again, I don't doubt that he cares about his daughter. But again, these actions are coming too late in the process. [The child is] now eleven years old, and she's lived a long time without having [Father] in her life when he had the opportunity and chose not to take advantage of an extremely liberal custody order.

So for all of these reasons, I find that [Mother] has met [her] burden of proof.

N.T., 5/28/25, at 89-91 (emphasis added).

Section 2511(a)(1) requires the trial court, in assessing a parent's fulfillment of his or her parental duties, to examine **the six months** immediately preceding the filing of a petition for involuntary termination of parental rights. 23 Pa.C.S.A. § 2511(a)(1). While our Supreme Court has explained that "courts are to avoid the mechanical application of the Adoption

- 11 -

Act," the specific language used by the General Assembly in fashioning Section 2511(a)(1) indicates that "the most critical period of evaluation is the six months immediately preceding the filing of the termination petition." **L.A.K.**, 265 A.3d at 592. Here, the trial court heard, and considered, testimony from both Mother and Father regarding Father's performance of his parental duties, as well as his parental bond with the child, for not only the six months preceding the filing of the termination petition but also since the child's birth in 2013. **See generally** N.T., 5/28/25. As such, we find Father's claim that the trial court erred because it did not consider a period of time beyond the six months preceding the filing of the termination petition to be unsupported by the record.

We concur with, and the record supports, the trial court's finding that Mother satisfied her burden for involuntary termination of Father's parental rights to the child under Section 2511(a)(1) and (b). Mother, Father, and the child lived together from the child's birth until sometime in 2015. **Id.** at 9, 55-56, 60. Father now resides in North Carolina. **Id.** at 47-48, 55. Mother testified that Father has not been physically or financially involved in the child's life and has not seen the child since the name-change hearing in March 2022. **Id.** at 10. Mother stated that Father has not sent birthday cards or gifts to the child and that Father does not contact her about the child's schooling, doctor appointments, or other activities. **Id.** at 11, 13. Mother explained that Father does not perform any of his parental duties with regard to the child and that he has not expressed to Mother a desire to exercise or

undertake any of those duties. *Id.* at 12. Since May 2017, Mother and Father have had a custody order in place regarding the child, as detailed by the trial court *supra*, and Father was aware of the custody order despite not attending the custody hearing. *See* Mother's Exhibit P-1; *see also* N.T., 5/28/25, at 17, 69. Mother stated, and Father agrees, that he has not sought to modify the custody order. N.T., 5/28/25, at 19, 45, 52, 69-70. Father testified that he relocated to North Carolina to be with his now-fiancé and because he believed he would have better employment opportunities in North Carolina. *Id.* at 47, 55. Father did not, however, file a relocation petition with the trial court notifying the trial court, or Mother, that he relocated to North Carolina. *Id.* at 45.

Mother maintains a relationship with Father's family members and stated that, if the child wished to contact Father, she could through the family members but, thus far, has not attempted to contact Father. *Id.* at 24. Father admitted that he was unaware of what grade the child was in, what school she attended, or who she saw for her medical needs. *Id.* at 60, 66. Father further admitted that his last visit with the child was in 2022. *Id.* at 63. Father explained that he knew maternal grandmother took the child to a certain restaurant every Friday at noon and, in 2022, he arranged to be at the restaurant to see the child. *Id.* Despite knowing maternal grandmother's routine with the child, Father stated that he did not attempt to visit with the child in this way again. *Id.* Father testified that he did send "some gifts and cards" to the child *via* maternal grandmother's residence and if the child "got

them, she got them." *Id.* at 65. Father stated that his last attempt to send the child a card or gift was more than a year ago. *Id.* Although Father explained that he had means by which to contact maternal grandmother to verify receipt of the cards and gifts, Father never followed through to ensure that the child received the items. *Id.* at 73. Father agreed that he has not seen the child in over three years. *Id.* at 67.

Regarding Father's bond with the child, Mother stated that Father does not maintain a parent-child relationship with the child. *Id.* at 21-22. When Father was asked if he thought the child and he maintained a parent-child bond, Father responded that "I think if she saw me that bond would still be there." *Id.* at 68. When asked if Father knew what the child liked to do in terms of activities, however, Father responded that "I know she likes to dance, but that's about as much as I know about her." *Id.* at 67. Finally, Attorney Hofer, on behalf of the child, informed the trial court that when she met with the child prior to the termination hearing, she asked the child to explain "who she lived with." *Id.* at 80. The child responded that she lived with "her mom, her dad [(referring to the child's stepfather), her] sister[,[6]] and her two cats." *Id.* Attorney Hofer further stated that the child "was very clear that she wanted [stepfather] to be her only dad[, that she] has not heard from [Father] since the [name-change hearing in March 2022, and she] wants to be adopted [by stepfather]." *Id.* Attorney Hofer explained that, in her opinion, there was

_____

[6] Mother and stepfather have one biological child together.

a bond between the child and stepfather and that the child did not have an emotional bond with Father. *Id.* at 79.

Based upon our review, we find ample support in the record for the trial court's conclusion that Mother satisfied her burden under Section 2511(a)(1) and (b). As such, we discern no abuse of discretion or error of law in the trial court order that involuntarily terminated Father's parental rights to the child.

In his second issue, Father asserts that the trial court erred by granting only a 30-day continuance of the termination hearing and rescheduled the hearing for May 28, 2025, when, according to Father, he requested a 90-day continuance.[7] Father's Brief at 10. Father argues that he "requested [90] days as he considered this the minimum time needed to prepare an effective argument" and the "trial court's decision to grant only a 30-day continuance prejudiced [him] by giving [Attorney Cooper] insufficient time for preparation." *Id.*

> The matter of granting or denying a continuance [in a proceeding, including, *inter* alia, an involuntary termination hearing] is within the discretion of the trial court. Appellate courts will not disturb a trial court's determination absent an abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its

_____

[7] Father asserts that he "submitted a timely motion for [a] 90-day continuance for the [termination] hearing[.]" Father's Brief at 10 (extraneous capitalization omitted). A copy of Father's motion for a continuance, however, is not part of the certified record. *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (stating, "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty").

discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will.

***In Interest of D.F.***, 165 A.3d 960, 964-965 (Pa. Super. 2017) (citations and quotation marks omitted), *appeal denied*, 170 A.3d 991 (Pa. 2017). Section 2513(b) of the Adoption Act mandates that a parent, whose rights are at risk of being terminated, receive a minimum of 10 days' notice of a termination hearing. 23 Pa.C.S.A. § 2513(b).

> Once a [trial] court is satisfied that a parent has received notice of the hearing, it is then entirely within the trial court's discretion to make a ruling on the continuance request based on the evidence before it. As in all matters involving parental rights, the best interests of the child are paramount. Accordingly, the exercise of the trial court's discretion includes balancing the evidence submitted in support of the request against other relevant factors, such as a parent's response and participation, or lack thereof, in prior proceedings and appointments important to the welfare of the child. Most importantly, the trial court is in the best position to factor in the impact that further delay will have on the child's well-being.[FN4]
>
>> [Footnote 4:] The trial court's consideration in granting or denying a continuance in a parental rights termination proceeding necessarily will include consideration of the amount of time that will lapse before it is able to schedule another hearing, and the impact that that further delay will have on the child's security and welfare.

***D.F.***, 165 A.3d at 965.

Upon Mother filing the termination petition in January 2025, the trial court scheduled a hearing on the petition for March 25, 2025. Trial Court Order, 2/12/25. On March 25, 2025, Father requested the appointment of counsel and the trial court, *in lieu* of conducting a termination hearing,

appointed Attorney Cooper to represent Father and continued the matter. Trial Court Order, 3/25/25. The next day, March 26, 2025, the trial court rescheduled the termination hearing for April 30, 2025. Trial Court Order, 3/26/25. At the April 30, 2025 hearing, Father requested, over the objection of Mother, a continuance to allow he and his counsel to adequately prepare for the termination hearing. The trial court granted another continuance and scheduled the termination hearing for May 28, 2025. Trial Court Order, 5/2/25. The trial court explained that its decision to grant the continuance was predicated upon the fact that Father "failed to put any evidence on the record to suggest that he needed additional time [beyond May 28, 2025,] to present [] additional witnesses or obtain additional documents." Trial Court Opinion, 9/4/25, at 3. We discern no abuse of discretion or error of law in the trial court's order that granted a continuance and rescheduled the termination hearing for May 28, 2025.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/30/2026

- 17 -